

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          **FILED**          CRIMINAL ACTON

v.                    MAY 0 4 2009

ROBERT MERZ          MICHAEL E. KUNZ, Clerk          NO. 07-199
                     By_____Dep. Clerk

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.,**                                        **May 4, 2009**

Defendant Robert Merz moves to suppress all physical evidence recovered from the search

of his home, arguing the affidavit supporting the search warrant was insufficient to establish

probable cause.  Merz also moves to suppress statements he made during a proffer session and all

evidence derived therefrom.  In a related motion, Merz moves to dismiss Counts I and IV of the

Second Superseding Indictment,[1] asserting both counts are based upon the Government's improper

use of information derived from Merz's proffer session.

The Court finds the affidavit established probable cause to issue a warrant to search Merz's

home, and therefore will deny Defendant's motion to suppress physical evidence recovered from his

home.  The Court also finds Merz's proffer agreement prohibits introduction of statements made

during his proffer session, and therefore will grant Merz's motion to suppress his proffer statements.

---

[1] The Government has since filed a Third Superseding Indictment, Counts I and IV of which contain the same charges as Counts I and IV of the Second Superseding Indictment. The Court will therefore treat Merz's motion as a motion to dismiss Counts I and IV of the Third Superseding Indictment. Count I charges Merz with advertising child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A), and Count IV charges him with transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1).

The Court concludes introduction of evidence derived from Merz's proffer statement is permissible under the terms of his proffer agreement and governing law. The Court will therefore deny both Merz's motion to suppress evidence derived from his proffer statements and his motion to dismiss Counts I and IV of the Second Superseding Indictment.

The Government moves to admit evidence of Merz's two prior convictions for child molestation to show his propensity to commit sex crimes involving children. The Court concludes evidence of Merz's two prior convictions is admissible under Federal Rule of Evidence 414 and the balancing analysis prescribed by *Johnson v. Elk Lake School District*, 283 F.3d 138 (3d Cir. 2002), and therefore will grant the Government's motion to admit evidence of Merz's prior convictions.

**FINDINGS OF FACT**

1.    In July 2006, Special Agent Wade Luders, FBI, learned of the existence of "Ranchi," an Internet site which displayed child pornography. The Ranchi site was a message board – a website which works like a bulletin board, at which individuals can post and download text, links, images, videos, and/or other files. Special Agent Luders's investigation revealed the site was located in Japan, and was used for the purpose of posting child pornography and related text.

2.    Upon entering the Ranchi site, users are directed to read a Frequently Asked Questions and Tutorials section, in which there are posts stating the Ranchi board is used to exchange child pornography and containing tips about how to encrypt files, remove identifying information, and generally evade law enforcement.

3.    Between July and December 2006, Special Agent Luders downloaded several video and image files from the Ranchi site, each of which depicted children engaged in sexual acts.

4.      On October 25, 2006, Special Agent Luders, acting undercover, posted two files to the Ranchi board, accompanied by text describing the purported contents of the files.  The text provided graphic descriptions of child pornography.  Neither file actually contained child pornography.

5.      When users attempted to download the files, Special Agent Luders's computer recorded their Internet protocol (IP) addresses.[2]

6.      On October 25, 2006, at 8:05 P.D.T., the IP address 68.80.255.79 was used to attempt to download Special Agent Luders's files.  Federal agents used a publicly available website to determine Comcast Cable Communications controlled that IP address.

7.      On November 10, 2006, Comcast responded to a Department of Justice Administrative Subpoena and provided subscriber information for the user of IP address 68.80.255.79, on October 25, 2006, at 8:05 P.D.T.  Comcast identified the subscriber as Paul Merz, at 3094 Agate Street, Philadelphia, Pennsylvania 19134.  Defendant Robert Merz resided with his father, Paul Merz, at this address before Defendant Merz's arrest on the instant charges.

8.      On February 23, 2007, Special Agent Pamela Kirschner averred, in an affidavit (Kirschner affidavit), she had served as an FBI agent since 1997.  She stated she was assigned to the Philadelphia division of the FBI's Cyber Crime Squad and had worked primarily on cases involving online crimes against children.  She also stated her work had familiarized her with methods and schemes employed by pedophiles.

9.      In her affidavit, Special Agent Kirschner provided general information about the ways in

------

[2]When a computer user visits a website, the user's IP address is visible to that website.  With the assistance of Internet service providers, law enforcement can trace an IP address to a specific subscriber's residence.

which individuals use computers and the Internet to produce, store, and exchange child pornography, including production of pornographic images and videos in digital format, open and anonymous communication with other collectors via e-mail, chat, and message boards, and easy storage of massive amounts of child pornography on hard drives and external storage devices.

10.    Special Agent Kirschner also identified common characteristics among child pornography collectors, including their tendency to retain such materials for extended periods of time and to store them in private, secure locations, such as their homes.

11.    Special Agent Kirschner outlined the details of Special Agent Luders's online investigation. She opined any user who attempted to download Special Agent Luders's posted files would have done so intentionally and with the belief and expectation the files would contain child pornography.

12.    Special Agent Kirschner recounted the steps taken by the FBI to ascertain the user of IP address 68.80.255.79.  She stated an Internet service provider linked the IP address to the subscriber residence at 3094 Agate Street, and she detailed her investigation of public records and physical surveillance of this address, noting United States Postal Service records indicated both Paul Merz and Robert Merz received mail at that address.

13.    Based on the Kirschner affidavit, Magistrate Judge L. Felipe Restrepo issued a warrant to search 3094 Agate Street, Merz's residence, and seize any items which could be used to store or convey child pornography, including specific computer equipment.  The search warrant also authorized agents to take photographs of the premises.

14.    The warrant was executed on February 27, 2007.  Merz's computer and 106 DVDs were

4

recovered from Merz's bedroom.

15.    On March 6, 2007, the Government filed an Amended Complaint against Merz.

16.    An Amended Affidavit, filed with the Amended Complaint, described the search of 3094

Agate Street and statements made by Paul and Robert Merz at the scene.  Robert Merz told

agents, "it's me you want to arrest," and that his father was "not involved" in Merz's

activities.  Paul Merz stated he requested Comcast Internet service upon his son's request and

he (Paul Merz) did not know how to use a computer.  The Amended Affidavit also described

some of the images of child pornography found on the seized computer and DVDs.

17.    On March 14, 2007, Merz engaged in an "off-the-record" proffer session with the

Government.  This discussion took place pursuant to a proffer letter, executed by Assistant

United States Attorney Denise Wolf, Merz, and Merz's then-counsel, David Kozlow.

18.    Regarding use of information gained during the proffer session against Merz, the proffer

letter states:

> First, no statements made by you [Mr. Kozlow] or your client [Merz], or other
> information provided by you or your client during the "off-the-record" proffer, will
> be used directly against your client in any criminal case.
>
> Second, the government may make derivative use of, and may pursue
> investigative leads suggested by, statements made or information provided by you or
> your client.  That is:
> [a] your client waives any right to challenge such derivative use and agrees
> that such use is proper; and
> [b] your client agrees that Federal Rule of Criminal Procedure 11(f) and
> Federal Rule of Evidence 410 does not govern such derivative use.

The proffer letter also stated it "d[id] not constitute a plea agreement or cooperation agreement, nor

[wa]s it a precursor to, or part of, such an agreement."

19.    At the proffer session, Merz gave the Government his password to access an Internet

message board known as My Kingdom, and signed a separate consent form in which he allowed the Government to use his online identity when interacting with individuals who frequented the My Kingdom site. The Government used Merz's online identity in its investigation in this case.

20. At the proffer session, Merz orally agreed to a 60-day extension of time under the Speedy Trial Act, within which the Government could seek an indictment.

21. The Government failed to file an indictment or motion for extension by April 5, 2007, the Speedy Trial Act deadline.

22. On April 10, 2007, the Government moved for an extension of time under the Speedy Trial Act. Merz opposed this motion.

23. On April 11, 2007, the Government filed a motion to dismiss the amended complaint without prejudice. Merz also opposed this motion, arguing the complaint should be dismissed with prejudice. At the conclusion of a hearing held the same day, Magistrate Judge Restrepo granted the Government's motion.

24. The grand jury returned an indictment on April 12, 2007, charging Merz with receipt and possession of child pornography.

25. On August 1, 2007, Merz, through counsel, withdrew his permission for the Government's use of his online identity, and the Government ceased using Merz's identity.

26. On October 25, 2007, the grand jury returned a Superseding Indictment against Merz which added another count – advertising child pornography. The Government used evidence derived from Merz's March 14, 2007 proffer session to show he committed this offense.

27. The Government subsequently added the charges of advertising and transportation of child

pornography in the Second and Third Superseding Indictments.

28.    On January 31, 2007, Jonathan Adams signed a consent to allow government agents to assume his online presence. Adams told government agents he jointly administered My Kingdom with Merz. Adams pled guilty to child pornography charges in the United States District Court for the District of New Jersey.

29.    John Hiner, a visitor to the My Kingdom site, pled guilty to child pornography charges in the Eastern District of Virginia.

**DISCUSSION**

Merz argues all physical evidence recovered from the search of his home should be suppressed because the affidavit supporting the search warrant did not establish probable cause. Merz argues the Kirschner affidavit failed to provide probable cause because the files Special Agent Luders posted did not contain child pornography, and, even if they had, there was an insufficient link between Merz's IP address and his home to establish probable cause to search his home. Merz also asserts the Kirschner affidavit was defective because it was based upon stale information.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When reviewing a magistrate judge's finding of probable cause, this Court "must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). The Court "need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." *Id.* (citation and internal quotation marks omitted).

"Age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993) (citations omitted). Age is not the sole determinative factor of staleness, however, and courts "must also examine the nature of the crime and the type of evidence." *Id.*

The Kirschner affidavit set forth sufficient facts for the magistrate judge to conclude there was a "fair probability" child pornography would be found at Merz's residence. The affidavit described attempts by a user of an IP address registered to Merz's residence to download the files posted by Special Agent Luders. Such files were advertised as containing child pornography, and were posted to a website that provided links to child pornography. The download attempts provided a "substantial basis" for the magistrate judge's conclusion there was a "fair probability" child pornography would be found at Merz's address. Furthermore, because Special Agent Kirschner was an experienced FBI agent familiar with online crimes perpetrated against children, the magistrate judge was entitled to give substantial weight to her conclusion there likely would be child pornography found in Merz's residence. *See United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.") (citation and internal quotation marks omitted).

The Court also concludes there was a sufficient connection between the IP address recorded by Special Agent Luders and the physical location to which the IP address was linked to establish probable cause to search the physical location. In *United States v. Perez*, 484 F.3d 735 (5th Cir.

2007), the Fifth Circuit concluded an affidavit which linked an IP address with the transmission of child pornography established probable cause to search the physical address at which the subscriber using the IP address was registered.  *Id.* at 740.  The *Perez* court reasoned:  "[T]hough it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence."  *Id.*  In addition, two other district courts have denied suppression of evidence recovered from residential searches executed pursuant to warrants based upon affidavits similarly linking IP addresses to residential addresses.[3]  *See United States v. Carter*, 549 F. Supp. 2d 1257 (D. Nev. 2008); *United States v. Vosburgh*, No. 07-cr-171 (E.D. Pa. Sept. 13, 2007).  The Court concludes the magistrate had a substantial basis for his conclusion there was a fair probability child pornography would be found at the residence of the registered user who attempted to download child pornography.

The four-month delay between Special Agent Luders's undercover investigation and procurement of the warrant to search Merz's residence did not render the information supporting the warrant stale.  The Kirschner affidavit explained that child pornography collectors retain their collections for lengthy periods, and the Third Circuit and other federal circuits have concluded that, in child pornography cases, a four-month delay does not establish staleness.  *See United States v.*

---

[3]In arguing there was an insufficient link between Merz's IP address and his home to establish probable cause to search his home, Merz relies on *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002).  In *Zimmerman*, the Third Circuit concluded a warrant lacked probable cause for a residential search because, among other reasons, the pornographic video clip in question "may well have been located in cyberspace, not in [the defendant's] home."  *Id.* at 435.  *Zimmerman* is inapposite, however, because the affidavit supporting the defective search warrant did not suggest Zimmerman downloaded the video clip.  *Id.*  In this case, the Kirschner affidavit describes multiple attempts, made by IP address user 68.80.255.79, to download files which purported to be child pornography.  Such affirmative attempts to locate, capture, and save such files suggest child pornography was likely to be "physically present" in the residence linked to the IP address.  *See id.*

*Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (concluding information between two- and fifteen-months old was not stale where affiant, an FBI agent, stated pedophiles like the defendant rarely, if ever, dispose of child pornography); *United States v. Eberle*, 266 Fed. Appx. 200, 205-06 (3d Cir. Feb. 25, 2008) (affirming district court's conclusion that three-and-a-half year old information was not stale in part because affiant, an FBI agent, explained that individuals retain child pornography for extended periods of time); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (over three years);  *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (*en banc*) (less than four months); *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) (one year); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (three months); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (six months); *United States v. Horn*, 187 F.3d 781, 786-87 (8th Cir. 1999) (over three months); *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997) (ten months).

Even if the search warrant in this case were not based upon probable cause, the good-faith exception to the exclusionary rule, established by *United States v. Leon*, 468 U.S. 897 (1984), would apply in this case.  The good-faith exception requires this Court to deny a suppression motion where "an officer executes a search warrant in objectively reasonable reliance on a warrant's authority." *Hodge*, 246 F.3d at 305.  "The test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Id.* at 307 (alteration, citations, and internal quotation marks omitted). "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness . . . ." *Leon*, 468 U.S. at 922 (alteration and internal quotation marks omitted).  Even if the search warrant in the instant matter were defective, the good-faith exception would apply because it was objectively

10

reasonable for an officer to rely upon the authority of the search warrant based upon an affidavit detailing criminal activity on the Ranchi web site, the connection between Merz's residence and such activity, and typical use of the Internet by individuals who collect child pornography.

Merz moves to suppress statements made during his March 14, 2007 proffer session. The letter memorializing the agreement between Merz and the Government regarding Merz's proffer provides: "no statements made by [Merz's then-counsel] or [Merz], or other information provided by [Merz's then-counsel] or [Merz] during the 'off-the-record' proffer, will be used directly against [Merz] in any criminal case." Thus, to the extent Merz's motion seeks to suppress statements made by himself or his then-counsel during his proffer discussion, his motion will be granted.

Merz also argues derivative evidence gathered by the Government as a result of information provided pursuant to his proffer should also be suppressed.[4]  Merz contends derivative evidence should be suppressed because he understood from the proffer agreement he would have the opportunity to receive a reduced sentence as long as he provided truthful and complete information to the Government, and he contends he has provided such information.[5] *See United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2001) ("The government may not rely upon a rigid and literal construction of the terms of a plea or cooperation agreement. . . . Courts must determine whether the government's conduct was inconsistent with what was reasonably understood by defendant when

---

[4]Merz does not identify precisely what evidence he seeks to suppress, but it appears he seeks to suppress additional information regarding Merz's alleged wrongdoing gathered by the Government when its agents accessed the My Kingdom website using Merz's password and online identity.

[5]The Government disputes Merz's account of his willingness to cooperate, arguing Merz unilaterally stopped cooperating when he reneged on his verbal agreement to a continuance and opposed the Government's motions related to its failure to meet the Speedy Trial deadline.  The Court need not determine which party terminated plea discussions, however, because the plain language of the proffer letter controls the Government's use of derivative evidence.

entering the plea of guilt.") (citations omitted).  Merz contends the Government's use of derivative evidence to charge him with additional counts, which expose him to a much greater prison sentence, is inconsistent with his understanding of the proffer agreement.

Merz's proffer letter provides: "the government may make derivative use of, and may pursue investigative leads suggested by, statements made or information provided by [Merz's then-counsel] or [Merz]."  In the letter, Merz agreed to "waive[] any right to challenge such derivative use and agree[d] such use is proper."  The Ninth and Eleventh Circuits have concluded similar proffer agreements prohibited only use of defendants' statements made during proffer sessions and affirmed admissibility of evidence derived from such statements.  *See United States v. Pielago*, 135 F.3d 703 (11th Cir. 1998) (concluding the government did not violate its proffer agreement by introducing testimony of a cooperative witness whose existence was revealed to the government during the defendant's proffer); *United States v. Chiu*, 109 F.3d 624 (9th Cir. 1997) (concluding the government did not violate its proffer agreement where it used the defendant's statements to prepare government witnesses for trial testimony).  An unpublished Third Circuit opinion, *United States v. Carter*, 176 Fed. Appx. 246 (3d Cir. Apr. 18, 2006), is also instructive.  In *Carter*, the defendant claimed the government's contact with co-conspirators he had named in the proffer session violated the government's agreement not to use his proffer statements against him. *Id.* at 249-50.  The proffer letter terms at issue in *Carter* were identical to those in this case. *See id.* at 249 (quoting proffer letter language).  The court rejected the defendant's argument, concluding discussions with co-conspirators constituted use of the defendant's information "for the purpose of developing derivative evidence." *Id.* at 249.  Similarly, Merz's arguments regarding his understanding of his proffer agreement must be rejected in favor of the proffer letter's express terms.  In the letter, Merz

expressly agreed the Government was free to use any evidence derived from his proffer statements or investigative leads based upon such statements.  Therefore, Merz's motion to suppress evidence derived from his proffer will be denied.

Merz moves to dismiss Counts I and IV of the Third Superseding Indictment, charging him with advertising and transportation of child pornography, on the ground that they are based on improper use of evidence derived from Merz's proffer session and post-proffer cooperation.  Merz claims the Government gathered the evidence underlying Counts I and IV, including the discovery of a witness against him, when Merz allowed federal agents to use his My Kingdom password and assume his online identity.

Merz asserts the Government has a duty of good faith in its dealings with cooperating defendants.  *Cf. United States v. Isaac*, 141 F.3d 477 (3d Cir. 1998) (concluding a duty of good faith attaches to plea agreements and district courts have jurisdiction to evaluate whether the government complied with this duty where a defendant claims a bad-faith failure to file a downward departure motion); *see also United States v. Floyd*, 428 F.3d 513 (3d Cir. 2005) (recognizing the good-faith requirement imposed by *Isaac*).  Merz asserts the Government breached its duty of good faith when it terminated plea negotiations and used information derived from his proffer session and online consent to add additional counts in superseding indictments.[6]  Merz argues he therefore should be afforded equitable immunity from prosecution on Counts I and IV.

As a general matter, the Government's prosecutorial decisions are subject to review only for

---

[6]As a factual matter, the Government agrees it used evidence derived from Merz's proffer to show he committed the offense of advertising child pornography, but also identifies sources independent of the proffer session from which it gathered information to add new counts in the superseding indictments, including forensic examination of Merz's computer after its seizure and the cooperation of Adams prior to Merz's proffer session.

13

conformity with the Constitution. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) ("In our criminal justice system, the Government retains broad discretion as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (alteration, citations, and internal quotation marks omitted). This principle of broad discretion is applicable in the context of the Government's prosecution of a cooperating defendant. *See Wade v. United States*, 504 U.S. 181 (1991) (holding the government's failure to seek downward departure in the defendant's sentencing, after the defendant had provided information that led to the arrest of another drug dealer, was reviewable only for constitutional infirmity, such as use of race or religion as a basis for the prosecutorial decision). Merz has not alleged the Government's decision to prosecute him on the additional counts of the superseding indictments was based upon unconstitutional considerations.

*Isaac* creates an exception to the rule that prosecutorial discretion is generally non-reviewable. Under *Isaac*, a district court is empowered to examine whether the government complied with its duty of good faith where a defendant claims a bad-faith failure to file a downward departure motion. *Id.* at 484. The Government asserts the good-faith duty imposed by *Isaac* is inapplicable here because it attaches only to plea agreements. Certain passages in *Isaac* support the Government's contention. *See* 141 F.3d at 481 ("[I]t is clear that, in the absence of a plea agreement, a district court has an extremely limited role in reviewing the government's refusal to move for a departure."); *id.* ("[W]here the defendant has not entered a plea agreement, it is clear that the prosecutor has almost unreviewable discretion over whether to file a substantial assistance motion."); *id.* at 482 ("In the absence of a plea agreement, review is allowed only for an unconstitutional

14

motivation."). On the other hand, *Isaac*'s conclusion that a duty of good faith attaches to plea agreements appears to rest upon the existence of a contractual relationship between the Government and the defendant. *See id.* at 482 ("The scope of review given a prosecutor's refusal to make a substantial assistance motion under § 5K1.1 is thus dependent upon the existence of a contractual relationship between the defendant and the government."); *id.* at 483 ("All that our decision requires of the district courts is that they apply settled principles of contract law to a particular type of contract."). The Government appears to concede the existence of such a relationship between itself and Merz in the instant case when it argues the proffer letter should be construed according to principles of contract law. *See* Gov't Br. in Opp'n to Def.'s Omnibus Mot. for Pretrial Relief at 14 ("Defendant's nearsighted view of the proffer agreement, and his attempt to 'cherry pick' its provision is wholly inconsistent with the principles of contract law that govern construction of proffer agreements."); *see also United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) ("A proffer agreement is a contract and its terms must be read to give effect to the parties' intent.").

In this case, however, the Court need not decide whether the duty of good faith imposed by *Isaac* extends to a proffer agreement because the Court concludes the Government's prosecution is not being conducted in bad faith.[7] The proffer letter's terms, to which Merz agreed, expressly authorize use of derivative evidence. Therefore, the Government's use of such evidence to bring

---

[7]The Government also asserts its termination of plea negotiations was not in bad faith because it cut off negotiations only after Merz refused to cooperate, as evidenced by Merz's retraction of his verbal agreement to extend the Speedy Trial deadline, opposition of the Government's motions in connection with the Speedy Trial deadline, and withdrawal of consent to federal agents' use of his online presence. Regardless of which party is responsible for the termination of plea negotiations, the Government's prosecution of Merz cannot be considered in bad faith given the terms of the proffer letter.

additional charges against Merz cannot be considered bad faith when such use was contemplated by the terms of the proffer agreement.  Similarly, the terms of Defendant's consent to assume his online identity were governed by a "Consent to Assume Online Presence," to which Defendant agreed "freely and voluntarily, without fear, threats, coercion, or promises of any kind."  Thus, the Government's use of information it gained through its online investigation of the My Kingdom website is not evidence of bad faith because the Government expressly made no promises not to prosecute Merz in exchange for his consent to use his password and online identity.  The Court concludes, even assuming a duty of good faith attaches to a proffer agreement, Merz has failed to show the Government's prosecution was conducted in bad faith.  Therefore, Merz's motion to dismiss Counts I and IV of the Second Superseding Indictment will be denied.[8]

The Government moves to admit evidence of Merz's two prior convictions of child molestation under Federal Rule of Evidence 414, which establishes an exception to the general rule that evidence to show the defendant's propensity to commit a crime is inadmissible.  Rule 414 provides that evidence of similar crimes may be admissible in child molestation cases.  The Government seeks to introduce evidence of 1) Merz's July 9, 1987 conviction of involuntary deviate sexual intercourse and corruption of a minor, for molesting a 10-year-old girl; and 2) Merz's May 26, 1993 conviction of aggravated indecent assault, indecent assault, and corrupting a minor, for molesting a nine-year-old girl.  The Government asserts it is prepared to introduce certified copies of Merz's guilty pleas, commitment orders, complaints, affidavits of probable cause, an interview

---

[8]In his brief in support of his Supplemental Motion for Pretrial Relief, Merz argues government agents, while posing as Merz on the My Kingdom website, revealed information about Merz, particularly his name, to a third party who will testify against Merz at trial.  The Court reserves until trial its ruling on admissibility of such testimony.

record attested to by Merz, and the transcript of Merz's May 26, 1993 plea hearing.

Rule 414 states in relevant part:

> (a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
> . . .
>
> (d) For purposes of this rule and Rule 415, . . . "offense of child molestation" means a crime under Federal law or the law of a State . . . that involved –
>
> (1) any conduct proscribed by chapter 109A of title 18, United States Code, that was committed in relation to a child;
>
> (2) any conduct proscribed by chapter 110 of title 18, United States Code;
>
> (3) contact between any part of the defendant's body . . . and the genitals . . . of a child;
>
> (4) contact between the genitals . . . of the defendant and any part of the body of a child; . . . .

Fed. R. Evid. 414. The Third Circuit has instructed a Rule 403 balancing analysis is appropriate when deciding whether to admit evidence under Rules 414. *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 155-56 (3d Cir. 2002).

Merz is charged with an "offense of child molestation" in the instant matter because the crimes for which he was indicted – violations of 18 U.S.C. §§ 2251; 2252 – are found within chapter 110 of Title 18 of the United States Code, and Rule 414 defines "offense of child molestation" to include all conduct proscribed by that chapter. Fed. R. Evid. 414(d)(2). Merz's prior convictions

17

were also "offenses of child molestation" under Rule 414.   Merz's 1987 conviction involved

conduct which satisfies the definitions of "offense of child molestation" set forth in Rule 414(d)(1),

(3), and (4), and Merz's 1993 conviction involved conduct which satisfies the definitions of "offense

of child molestation" set forth in Rule 414(d)(1) and (3).

Rule 414 is the result of a "strong legislative judgment that evidence of prior sexual offenses

should ordinarily be admissible." *Johnson*, 283 F.3d at 155 (citing *United States v. LeCompte*, 131

F.3d 767, 769 (8th Cir. 1997)).   Where the government can show a past offense with specificity and

the act is sufficiently similar to the act with which the defendant is charged, there is a presumption

in favor of admissibility of Rule 414 evidence. *See id.* at 156.   The following factors are also

relevant when weighing admissibility under Rule 414: "the closeness in time of prior acts charged,

the presence or lack of intervening events, and the need for evidence beyond the testimony of the

defendant and alleged victim." *Id.* (citing *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir.

1998)) (internal quotation marks omitted).

As for the first *Johnson* factor, the Government's certified copies of Merz's prior convictions

and related documents are specific and conclusive evidence of Merz's prior child molestation

offenses. Regarding the second *Johnson* factor, though this is a closer question, the Court concludes

Merz's prior offenses are sufficiently similar to the acts charged in the instant matter.   Child

pornography is a form of child sexual abuse, as is child molestation. *See United States v. Betcher*,

No. 07-2173, 2008 WL 2796721, at *4 n.6 (8th Cir. July 22, 2008); *United States v. Bentley*, 475 F.

Supp. 2d 852, 858 (N.D. Iowa 2007).   Other courts have similarly admitted evidence of child

molestation under Rule 414 where defendants were charged with child pornography crimes. *See*

*Bentley*, 475 F. Supp. 2d 852; *United States v. Prawdzik*, No. 07-40-03, 2008 WL 3983811 (E.D.

18

Pa. Aug. 25, 2008); *United States v. Summage*, No. 3:08-cr-0048-JAJ, 2008 WL 2561221 (S.D. Iowa

June 26, 2008).    Merz's past convictions are also similar to the instant charges because both

previous convictions resulted from Merz's molestation of young female victims, and the vast

majority of child pornography in Merz's cache depicted young female victims.    Because the

Government has shown Merz's past child molestation offenses with specificity and has shown they

are sufficiently similar to the crimes charged in the instant matter, the Court concludes there is a

presumption in favor of their admissibility.  *See Johnson*, 283 F.3d at 155-56.  This is not a case,

however, in which the Government's "need for evidence beyond the testimony of the defendant and

alleged victim" weighs in favor of admissibility.[9]  *Id.*

Under *Johnson*, the Court must conduct a Rule 403 balancing analysis and weigh the

probative value of evidence of Merz's prior child molestation offenses against its prejudicial effect.

The evidence is relevant and probative because it tends to show Merz's propensity to sexually

victimize young girls, and he is charged with sexually victimizing young girls in the instant case.

*See Bentley*, 475 F. Supp. 2d at 859-60 ("[T]he very purpose of Rule 414 is to show propensity.").

Though evidence of Merz's past child molestation offenses has the potential to be highly prejudicial,

such evidence will not be unfairly prejudicial, in light of the policy choices made by the drafters of

Rule 414.   *See id.* ("[B]ecause propensity evidence is admissible under Rule 414, this is not

*unfair* prejudice.") (citations omitted; emphasis in original); *Summage*, 2008 WL 2561221, at *3

---

[9]The other factors mentioned by the *Johnson* court are not particularly salient to the Rule 414 analysis in this case.  *See* 283 F.3d at 156 (listing "the closeness in time of prior acts charged" and "the presence or lack of intervening events" as relevant factors in the Rule 414 analysis) (internal quotation marks omitted).  Though Merz's prior child molestation offenses are relatively far in time from the acts for which he was indicted in the instant matter, he was incarcerated for those offenses for much of that time.  Neither party has argued there are any relevant intervening events.

("The defendant has not argued that there will be any unfair prejudice beyond what Congress contemplated in the enactment of 414."). Therefore, the Court concludes the probative value of Merz's past child molestation offenses outweighs their prejudicial effect, and the Court will grant the Government's motion to admit such evidence under Rule 414.

## CONCLUSIONS OF LAW

1. The Kirschner affidavit established a substantial basis for concluding probable cause existed to uphold the search warrant for 3094 Agate Street. The resulting evidence from the warrant executed on February 27, 2007 is therefore admitted.

2. Even if the search warrant were defective, the good-faith exception to the exclusionary rule would apply and the evidence recovered from the search of Merz's residence still would be admissible.

3. In the March 14, 2007 proffer letter, the parties agreed the Government would not use any statements made by Merz during his proffer session. Such statements are therefore excluded.

4. In the March 14, 2007 proffer letter, the parties agreed the Government could make derivative use of statements or information provided by Merz during his proffer session. Such derivative evidence is therefore admitted.

5. Even if a good-faith duty attaches to the March 14, 2007 proffer letter, the Government's use of evidence derived from statements or information provided by Merz during his proffer session was contemplated by the parties' agreement and therefore cannot constitute bad-faith prosecution. Merz's motion to dismiss two counts of the Third Superseding Indictment is therefore denied.

6. Evidence of Merz's prior child molestation offenses is admissible under Rules 414 and 403

and is therefore admitted.

An appropriate order follows.